**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| LESLIE LEHR, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    No. 4:19-CV-942 RLW |
| | ) |
| NIKE IHM, INC., et al., | ) |
| | ) |
|     Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Nike IHM, Inc.'s ("Nike") Motion to Enjoin State Court Complaint (ECF No. 20). Plaintiff Leslie Lehr opposes the Motion and it is fully briefed. Because the Court finds that a second lawsuit Plaintiff filed in the Circuit Court of St. Charles County, State of Missouri[1] (the "Second Suit"), was filed for the purpose of subverting the federal removal statute and Nike's right to remove, it will grant Nike's Motion and enjoin Plaintiff from proceeding with the Second Suit under the authority provided by the All Writs Act, 28 U.S.C. § 1651(a). See Kansas Pub. Employees Ret. Sys. v. Reimer & Koger Assocs., Inc., 77 F.3d 1063, 1069 (8th Cir. 1996) ("KPERS").

### I.   Background

Plaintiff filed the instant action in the Circuit Court of St. Charles County, Missouri, on March 21, 2019. Nike timely removed the case to federal court pursuant to 28 U.S.C. §§ 1331, 1441(a), and 1446, based on federal question jurisdiction. (ECF No. 1.) Plaintiff's Petition (ECF No. 5) asserts three federal employment discrimination claims against Nike, her former employer, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000, et seq.

---

[1] Lehr v. Nike IHM, Inc., Case No. 1911-CC00980 (11th Jud. Cir., Circuit Court of St. Charles County, Missouri).

("Title VII").[2]  Count I is a claim for race discrimination and hostile work environment, Count II is a claim for sex discrimination and hostile work environment, and Count III is a claim for retaliation discrimination and hostile work environment.

Plaintiff resigned from her job with Nike on August 13, 2018 (ECF No. 20-1, ¶ 24), prior to filing the instant action.  Plaintiff filed charges of discrimination asserting constructive discharge with both the federal Equal Employment Opportunity Commission ("EEOC") and the Missouri Commission on Human Rights ("MCHR").  Plaintiff received a right to sue letter from the EEOC on April 30, 2019, and from the MCHR on July 16, 2019.  (ECF No. 23 at 2 & n.3.)

When Plaintiff received the EEOC right to sue letter, she could have amended her Petition in the instant case as a matter of course to assert federal and/or state claims alleging constructive discharge, as Nike had filed its Answer on April 26, 2019 (ECF No. 7), and no case management order had been issued.  See Fed. R. Civ. P. 15(a)(1)(B) (allowing amendment as a matter of course within 21 days after service of a responsive pleading).  Plaintiff also could have sought leave of Court to amend her Petition after she received the MCHR right to sue letter, as the Case Management Order's deadline for motions to amend pleadings was September 20, 2019, more than sixty days later.  (ECF No. 14, ¶ 2.)

Plaintiff filed the Second Suit in state court on October 14, 2019, naming Nike as the only Defendant.  The Second Suit's Petition (ECF No. 20-1) is based on the same facts and issues arising out of Plaintiff's employment with Nike in the instant case, but its claims are based solely on the Missouri Human Rights Act, Mo. Rev. Stat. §§ 213.010, et seq. (2017 Supp.) ("MHRA").  Count I is a claim for race discrimination and constructive discharge, Count II is a claim for sex discrimination and constructive discharge, and Count III is a claim for retaliation

---

[2] Lehr v. Nike IHM, Inc., Case No. 1911-CC00980 (11th Jud. Cir., Circuit Court of St. Charles County, Missouri).

discrimination and constructive discharge.  Other than the statutory basis of the claims, the only difference between the two cases is that in the Second Suit, Plaintiff claims the racially, sexually, and retaliatory hostile work environment amounted to a constructive discharge.

The Petitions in this action and the Second Suit assert the following identical factual allegations:

- In April 2017, Plaintiff began working for Nike IHM, Inc. as a Plastic Component Operator in St. Charles, Missouri.  (Pet. ¶¶ 7-8; Second Suit ¶¶ 9-11.)

- Shortly after Plaintiff started working "she began enduring both racial and sexual harassment from co-workers."  (Pet. ¶ 12; Second Suit ¶ 9.)

- "On or about November 27, 2017, Plaintiff was assaulted at work by a female African-American co-worker."  (Pet. ¶ 13; Second Suit ¶ 10.)

- Plaintiff reported the assault and other harassment, but the "co-worker that assaulted her was not disciplined and no protection was provided to Plaintiff after the assault, other than Plaintiff was eventually allowed to transfer to a different shift."  (Pet. ¶ 14; Second Suit ¶ 11.)

- The "same co-worker that previously assaulted Plaintiff stalked Plaintiff . . . , Plaintiff was subjected to a sexually charged and explicit conversation between two co-workers, . . . and Plaintiff was again subjected to sexual harassment by a male co-worker."  (Pet. ¶¶ 15, 17, & 20; Second Suit ¶¶ 12, 14, & 17.)

- Plaintiff "lodged a complaint with the HR Department," (Pet. ¶ 18; Second Suit ¶ 15), and then she "was inexplicably removed from a training program."  (Pet. ¶ 19; Second Suit ¶ 16.)

- "As a result of the foregoing and other ongoing harassment, Plaintiff feared for her physical safety while working for Defendant" and was "forced to take disability leave of absence for anxiety and depression."  (Pet. ¶¶ 21-22; Second Suit ¶¶ 18-19.)

- Plaintiff alleges that based on these events she alleges, she was discriminated against based on her race, gender, and opposition to discrimination (Second Suit ¶¶ 28, 36, 44), and Plaintiff resigned (Second Suit ¶ 22).

Both Petitions assert claims of hostile work environment based on race, sex, and retaliation, with the instant action brought under federal Title VII law and the Second Suit under

3

the MHRA.  The Second Suit adds factual allegations that while Plaintiff was on leave, Nike "gave no indication it would take Plaintiff's safety seriously if she was to return to work," "all the feedback Plaintiff received led her to believe the situation would only be worse if she was to return to work," and her "working conditions had become intolerable such that Plaintiff was compelled to resign."  (ECF No. 20-1 ¶¶ 20-22, 25-26, 33-34, 41-42.)

**II.    Discussion**

Nike moves the Court to enjoin Plaintiff from litigating the Second Suit in state court on the basis that she split her cause of action and filed essentially the same cause of action in a second state suit to subvert federal removal jurisdiction.  In support, Plaintiff cites KPERS, 77 F.3d at 1069-70, among other federal cases.  The Eighth Circuit's KPERS decision concerns application of the All Writs Act and the Anti-Injunction Act, 28 U.S.C. § 2283.  Nike does not cite either the All Writs Act or the Anti-Injunction Act in its Motion or Reply, but the Court interprets Nike's Motion to Enjoin as being asserted pursuant to these statutes, because the federal decisions it cites concern the interaction and application of these Acts in the context of a second state court action filed following removal.[3]

The All Writs Act provides federal district courts with the power to issue injunctions that are "necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  The general provisions of the All Writs Act are limited by the more specific provisions of the Anti-Injunction Act, 28 U.S.C. § 2283.  The Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay

---

[3] Nike's Motion to Enjoin also discusses the Missouri state law doctrine of abatement.  (ECF No. 20 at 4-5.)  It is not clear whether Nike asserts this doctrine as an alternative basis for its Motion, or merely as an analogue to the federal statutes.  Nike does not assert and cites no legal authority to indicate that the Missouri abatement doctrine is applicable in federal court to a removed action that contains only federal claims.  Therefore, the Court does not discuss it further, other than to note that Plaintiff's opposition memorandum discusses only the Missouri abatement doctrine, and not Nike's cited federal cases, the All Writs Act, or the Anti-Injunction Act.  (ECF No. 23 at 1-2.)

4

proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

Thus, the Anti-Injunction Act prohibits federal courts from enjoining proceedings in state courts unless the injunction falls within one of its three exceptions. Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs, 398 U.S. 281, 286-87 (1970). The prohibition applies even where the injunction technically would be directed at a litigant instead of the state court proceeding itself. Id. The three exceptions to the Anti-Injunction Act are narrow and any doubts as to the propriety of an injunction "should be resolved in favor of permitting the state courts to proceed." Smith v. Bayer Corp., 564 U.S. 306 (2011) (quoted case omitted).

"The statute governing removal procedures, 28 U.S.C. § 1446 (1994), provides that after the defendant has given notice of removal and filed the notice with the state court, the state court 'shall proceed no further unless and until the case is remanded.' 28 U.S.C. § 1446(d)." KPERS, 77 F.3d at 1069. "This language has been considered express authorization to stay state court proceedings; therefore, injunctions to stay state proceedings in removed cases come within the first exception to the Anti-Injunction Act." Id. (citing Mitchum v. Foster, 407 U.S. 225, 234 & n.12 (1972); Vendo Co. v. Lektro-Vend. Corp., 433 U.S. 623, 640 (1977)). "Although the removal statute only commands the state court to stay the case that was actually removed, it has been interpreted to authorize courts to enjoin later filed state cases that were filed for the purpose of subverting federal removal jurisdiction." KPERS, 77 F.3d at 1069. The Eighth Circuit has held the express authorization exception "applies in federal question cases: after removal the plaintiff cannot file essentially the same case in a second state action to subvert federal jurisdiction." Id. at 1070. As such, the Anti-Injunction Act's "expressly authorized" exception is at issue in this case.

5

The Court is mindful of the narrowness of the expressly authorized exception, but under the circumstances presented here finds that the Second Suit was filed as an attempt to subvert Nike's statutory right to removal and federal removal jurisdiction. Although Plaintiff is the "master of [her] claim," Caterpillar Inc. v. Williams, 482 U.S. 386, 391 (1987), and has the power to select the claims she asserts and the original forum in which she files suit, Congress has provided defendants with certain statutory rights including the right to removal in certain instances. Id.; Bell v. Hershey Co., 557 F.3d 953, 956 (8th Cir. 2009). In the instant case, Nike properly exercised that right when it removed this case from state court to federal court in light of the federal questions in the Petition.

Federal courts have jurisdiction over an entire action, including state law claims, where the federal-law and state-law claims in the case "derive from a common nucleus of operative fact" and are "such that a plaintiff would ordinarily be expected to try them all in one judicial proceeding." KPERS, 77 F.3d at 1067 (quoting Carnegie-Mellon v. Cohill, 484 U.S. 343, 349 (1988)); see 28 U.S.C. § 1367(a) (where a federal court has original jurisdiction over an action, it also has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."). The claims in the instant action and the Second Suit unquestionably derive from a common nucleus of operative fact and Plaintiff would ordinarily be expected to try them all in one judicial proceeding.

As detailed above, the instant action and the Second Suit are based on identical facts, except for the Second Suit's additional allegations that Plaintiff was constructively discharged. The parties are identical in both suits, and Plaintiff is represented by the same counsel in both suits. Plaintiff asserts claims of hostile work environment based on race, sex, and retaliation in

6

both, but asserts those claims under federal Title VII law in the instant action and under the Missouri MHRA in the Second Suit. This distinction makes little difference, as the claims in both suits will be largely subject to the same elements and analysis because Title VII and MHRA claims require the same analysis for causes of action accruing on or after August 28, 2017. See Bram v. AT&T Mobility Servs., LLC, 564 S.W.3d 787, 795 (Mo. Ct. App. 2018); Missouri Approved Instruction 38.06 [2018 New]); see also Marshall v. Walgreen Co., 2018 WL 3025813, at *2 (E.D. Mo. June 18, 2018) (holding MHRA claims accrue when the alleged discriminatory conduct occurred); Evans v. Orthopedic Assocs., LLC, 2019 WL 3890773, at *2 (E.D. Mo. Aug. 19, 2019) (applying the same standards to plaintiff's Title VII and MHRA hostile work environment and retaliation claims).

The procedural events of this litigation convince the Court that Plaintiff is attempting to subvert the removal statute and federal removal jurisdiction by splitting her cause of action. In addition to the identical allegations and similar claims of the Petitions discussed above, the fact that Plaintiff filed both federal and state charges of discrimination on her constructive discharge claim and received EEOC and MCHR right-to-sue letters, but then filed the Second Suit in state court rather than filing an amended complaint in the instant action, evidences that the Second Suit was filed to subvert the removal statute. As previously stated, there were no procedural obstacles to Plaintiff bringing federal and/or state constructive discharge claims in the instant action.

Plaintiff concedes the two suits are related and "would be subject to consolidation in state court" but for Nike's removal of the instant action. (ECF No. 23 at 3.) Nonetheless, Plaintiff contends the two are "separate and distinct" because the instant action does not relate to her constructive discharge, while the Second Suit relates to the discharge. Plaintiff asserts that the

7

damages available in the instant action do not include any damages associated with her alleged constructive discharge, which she seeks in the Second Suit.[4] Plaintiff also points to her receipt of Right to Sue letters from the EEOC on April 30, 2019, and the MCHR on July 16, 2019, as evidence that she could not have filed the claim for constructive discharge as part of the instant action, which was filed prior to those dates.

Plaintiff's constructive discharge claim will require her to establish the additional elements that (1) a reasonable person in her situation would find the working conditions intolerable, and (2) Nike intended to force her to quit, or could reasonably foresee that its actions would cause her to quit.  See Wallingsford v. City of Maplewood, 287 S.W.3d 682, 686 (Mo. banc 2009) (en banc); DeWalt v. Davidson Serv./Air, Inc., 398 S.W.3d 491, 501 (Mo. Ct. App. 2013).  It is more significant, however, that Plaintiff's constructive discharge claims in the Second Suit are based on the same facts, evidence, and allegations as her hostile work environment claims in the instant action, and the cases involve the same parties and counsel. Plaintiff's assertion that the two actions are "separate and distinct" is unpersuasive.

Further, it is not necessary for the instant action and the Second Suit to be identical for the Court to determine the Second Suit was filed to subvert this Court's removal jurisdiction. See KPERS, 77 F.3d at 1069 ("[A]fter removal the plaintiff cannot file *essentially the same case* in a second state action to subvert federal jurisdiction.") (emphasis added).  The Second Suit here is essentially the same as the instant action, because there is identity of parties and counsel, overwhelming factual overlap, and similarity of claims.  The Second Suit constitutes an improper splitting of Plaintiff's claims that unquestionably derive from a common nucleus of operative fact and that Plaintiff would ordinarily be expected to try one judicial proceeding.  The existence

---

[4]The Court notes that Plaintiff's Petition in the Second Suit makes no explicit effort to restrict the damages sought therein to her constructive discharge.  See ECF No. 20-1 at 4, 5, 6 (prayers for relief).

8

of blatant claim splitting and the procedural gambit of Plaintiff's filing the Second Suit rather than amending her Petition in the instant case demonstrate that the Second Suit was filed to subvert the removal statute and the Court's removal jurisdiction.

The fact that the Second Suit need not be identical is illustrated by KPERS and other federal cases. In KPERS, the Eighth Circuit held that the district court properly enjoined KPERS from bringing a second state suit against its former accounting firm based on state claims of negligence and breach of contract, after similar claims in a prior state suit were removed by the Resolution Trust Corporation ("RTC"), even though the RTC was not a party to the second state court suit. 77 F.3d at 1070. The district court found the new suit was "substantially identical" to the first suit and that "KPERS had merely tried to 'carve up what was one case into separate cases with separate claims, all leading to a subversion of the RTC's right to remove the entire case.'" Id.

In Davis International, LLC v. New Start Group Corp., 488 F.3d 597, 605-06 (3d Cir. 2007), the plaintiffs filed an amended complaint following removal to eliminate all of their state-law claims and then filed another lawsuit against the same defendants in state court alleging the same state-law claims eliminated by the amended complaint, and *adding two more*. Both the district court and state court were "convinced . . . the plaintiffs [were] attempting to subvert the removal statute by splitting their claims," id. at 605, but the district court declined to enjoin the state suit because it did not believe it had subject matter jurisdiction in the removed suit. The Third Circuit stated, "Courts considering the question have unanimously held that a plaintiff's fraudulent attempt to subvert the removal statute implicates the 'expressly authorized' exception to the Anti–Injunction Act and may warrant the granting of an anti-suit injunction," id., and reversed and remanded for the district court to consider the motion to enjoin. Id. at 606.

9

Similarly, in Faye v. High's of Baltimore, 541 F.Supp.2d 752, 758-60 (D. Md. 2008), the district court enjoined the plaintiff under the All Writs Act from prosecuting a later-filed state-court suit with state claims *nearly identical* to those in a first suit that was removed to federal court, after plaintiff dismissed his state claims from the removed action.

Finally, in Lou v. Belzberg, 834 F.2d 730 (9th Cir. 1987), the Ninth Circuit stated, "It would be of little value to enjoin continuance of a state case after removal and then permit the refiling of *essentially the same suit* in state court." Id. at 740.  In contrast to the instant case, the second suit in Lou was not an attempt to subvert the purposes of the removal statute, as it involved "different plaintiffs, additional counsel, additional defendants, and only state claims," while the first suit combined state and federal claims.  Id. at 741.

### III.    Conclusion

Based on the facts and circumstances described above, the Court concludes that Plaintiff filed the Second Suit in state court and split her cause of action in an attempt to subvert the purposes of the removal statute and Nike's rights thereunder.  As a result, the "expressly authorized" exception to the Anti-Injunction Act applies and the All Writs Act authorizes the Court to grant Defendant Nike's Motion and enjoin Plaintiff from prosecuting Lehr v. Nike IHM, Inc., Case No. 1911-CC00980 in the 11th Judicial Circuit, Circuit Court of St. Charles County, Missouri.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Nike IHM's Motion to Enjoin State Court Complaint is **GRANTED**.  [ECF No. 20]

**IT IS FURTHER ORDERED** that Plaintiff is enjoined from prosecuting <u>Lehr v. Nike IHM, Inc.</u>, Case No. 1911-CC00980 (11th Jud. Cir., Circuit Court of St. Charles County, Missouri), until further notice.

A separate Injunction Order will accompany this Memorandum and Order.

*/s/ Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this <u>25th</u> day of August, 2020.